NATIONAL CITY BANK, NORTHEAST, Appellee,

v.

SPECIALTY TIRES OF AMERICA, INC. et al., Appellants.

[Cite as *Natl. City Bank, Northeast v. Specialty Tires of Am., Inc.* (1996), 109 Ohio App.3d 387.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17313.

Decided Feb. 14, 1996.

*Lawrence R. Bach,* for appellee.

*Jane Bell, Kevin R. Keogh, Timothy Reid, Robert T. Tinl,* for appellants.

D<small>ICKINSON</small>, Judge.

Defendant Specialty Tires of America, Inc. ("Specialty") has appealed from an order of the Summit County Court of Common Pleas that granted plaintiff National City Bank, Northeast ("NCB") summary judgment. The trial court issued NCB a declaratory judgment that it had a security interest in the accounts receivable of a now defunct corporation, Tiremix Inc. ("Tiremix"), that was superior to any interest Specialty had in those accounts. Specialty has argued that the trial court incorrectly granted NCB summary judgment because there were genuine issues of material fact and NCB was not entitled to judgment as a matter of law. It has assigned five errors: (1) the trial court incorrectly determined that NCB's security interest in Tiremix's accounts receivable attached to accounts receivable generated by the sale of goods owned by Specialty and consigned to Tiremix; (2) the trial court incorrectly determined that Specialty's consignment of goods to Tiremix was a disguised security interest and that, therefore, Specialty had to comply with R.C. Chapter 1309 in order to create and perfect a security interest in accounts receivable generated by the sale of those goods; (3) the trial court incorrectly applied R.C. 1309.111 to this case because Specialty did not intend to create a security interest in the goods at issue and R.C. 1309.111 does not determine priority in accounts receivable generated by the sale of consigned goods; (4) assuming that R.C. 1309.111 is applicable to this case, the trial court incorrectly determined that NCB would have priority in the accounts receivable generated by the sale of the goods it supplied Tiremix because NCB had actual knowledge of Specialty's consignment interest in those goods; and (5) Specialty's interest in the goods it placed with Tiremix was a true consignment, not a security interest.[1] This court affirms the judgment of the trial court because (1) Tiremix had rights in the accounts receivable generated by the sale of the consigned goods; and (2) regardless of whether Specialty's interest in the consigned goods was a true consignment or a security interest, NCB had a superior interest in Tiremix's accounts receivable.

I

Tiremix was formerly in the business of selling tires and tubes. On October 29, 1986, it borrowed $150,000 from NCB. As part of that transaction, it granted NCB a security interest in, among other things, all its accounts receivable. NCB perfected its security interest by filing financing statements with the appropriate county recorder on October 30, 1986, and with the Ohio Secretary of State on November 3, 1986. NCB and Tiremix later amended the October 29, 1986,

---

1. Specialty's assignments of error have been rearranged for ease of discussion.

agreement to eliminate NCB's security interest in certain of the collateral. NCB's security interest in Tiremix's accounts receivable, however, continued. NCB filed a continuation statement for the accounts receivable with the Secretary of State on October 1, 1991.

On June 29, 1988, Tiremix entered into an agreement with Specialty's predecessor pursuant to which Specialty's predecessor agreed to consign tires and tubes to Tiremix for sale. Pursuant to that agreement, Tiremix agreed to pay Specialty's predecessor for tires and tubes it sold, within thirty days of any such sale, regardless of whether Tiremix had sold them for cash or on credit:

"The proceeds of all merchandise sold from the consigned stock shall be held in trust for [Specialty's predecessor]. [Tiremix] shall maintain a separate accounting sufficient to enable [Specialty's predecessor] to identify funds derived from consigned merchandise. On the 25th day of each month, or sooner if demanded by [Specialty's predecessor], [Tiremix] will submit a report showing the merchandise disposed of during the preceding thirty (30) days and the quantity on hand, and at that time will account to and remit for all merchandise disposed of during said thirty (30) days at [Tiremix's] invoice price. [Tiremix] agrees not to part with the possession of any of said merchandise consigned to it until full payment for the same has been made by the purchaser or if credit be extended by [Tiremix] to the purchaser, the credit shall be at the sole risk of [Tiremix] and [Tiremix] shall account to [Specialty's predecessor] the same as if the said merchandise so sold on credit has been sold for cash."

Specialty's predecessor filed a financing statement with the appropriate county recorder on July 31, 1991, and with the Secretary of State on August 12, 1991. According to the financing statement, Specialty's predecessor had a security interest in the tires, tubes, and any accounts receivable generated by the sale of the tires and tubes:

"All tires and tubes now owned or hereafter acquired by [Tiremix] from [Specialty's predecessor]. Proceeds of the above described property are also covered, including all accounts receivable now due or hereafter to become due upon the sale by [Tiremix] of any part of said property."

On February 15, 1991, Tiremix borrowed an additional $350,000 from NCB. As security for this loan, Tiremix entered into two separate agreements with NCB by which it granted NCB a security interest in its equipment and additional collateral, including "all receivables now or hereafter owing to [Tiremix]." NCB filed financing statements with the appropriate county recorder on February 27, 1991, and with the Secretary of State on February 28, 1991.

Tiremix began experiencing financial problems during 1993. On June 11, 1993, NCB notified all Tiremix's account debtors that it had a security interest in

Tiremix's accounts receivable and that the debtors were to make all future payments on those accounts to NCB. NCB collected more than $200,000 from Tiremix's account debtors.

NCB filed this action against Tiremix and Specialty on August 4, 1993. It requested a declaratory judgment that, by virtue of its 1986 and 1991 agreements with Tiremix, it had a security interest in the accounts receivable of Tiremix that was superior to any interest Specialty had in any of those accounts.

On September 24, 1993, Specialty filed a counterclaim against NCB and a cross-claim against Tiremix. It sought a declaratory judgment that it had a superior security interest in any accounts receivable generated by Tiremix's sale of the consigned tires and tubes.

NCB moved for summary judgment on April 19, 1994. It argued that it was entitled to judgment as a matter of law on the issue of its priority in Tiremix's accounts receivable. Specialty responded to NCB's motion for summary judgment, and NCB replied to Specialty's response. On November 23, 1994, Specialty, with leave of court, filed a supplemental response to NCB's motion for summary judgment.

The trial court granted NCB summary judgment on May 22, 1995. Specialty timely appealed to this court.

## II

In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Specialty has argued that there were genuine issues of material fact and that NCB was not entitled to judgment as a matter of law.

## A

Specialty's first assignment of error is that the trial court incorrectly determined that NCB's security interest in Tiremix's accounts receivable attached to those accounts receivable generated by the sale of goods owned by Specialty and consigned to Tiremix. According to Specialty, NCB's security interest did not attach to accounts receivable generated by the sale of the consigned goods because NCB's security interest did not satisfy R.C. 1309.14(A).

R.C. 1309.14(A) provides that a security interest attaches to collateral and becomes enforceable against a debtor and third parties if three requirements are satisfied:

"(1) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral * * *; and

"(2) Value has been given; and

"(3) The debtor has rights in the collateral."

Tiremix signed security agreements that afforded NCB a security interest in all Tiremix's accounts receivable. In addition, NCB gave value to Tiremix in the form of loans. Specialty has argued, however, that NCB's security interest did not attach to accounts receivable generated by the sale of tires and tubes that Specialty consigned to Tiremix because Tiremix did not have any rights in those accounts receivable.

■■ The determination of whether a debtor has rights in collateral is determined by application of statute, the common law, or any applicable agreements. White and Summers, Uniform Commercial Code (4 Ed.1995) 127, Section 31-6. Specialty has argued that the agreement between its predecessor and Tiremix established that Tiremix had no rights in accounts receivable generated by the sale of consigned tires and tubes.

The consignment agreement between Specialty's predecessor and Tiremix provided that Tiremix would hold proceeds from the sale of consigned tires and tubes in trust for Specialty's predecessor. As noted previously, however, that agreement did not provide that Specialty's predecessor owned accounts receivable generated by the sale of the consigned goods. In fact, it required Tiremix to pay monthly for all consigned tires and tubes sold during the previous month, regardless of whether those tires and tubes had been sold for cash or on credit. Tiremix, not Specialty, had the right to payments received on the accounts receivable at issue. Tiremix, therefore, had rights in the accounts receivable generated by the sale of the consigned goods. Accordingly, pursuant to R.C. 1309.14(A), NCB's security interest attached to accounts receivable generated by the sale of the consigned tires and tubes. Specialty's first assignment of error is overruled.

### B

■■ Specialty's second assignment of error is that the trial court incorrectly determined that Specialty's consignment of goods to Tiremix was a disguised security interest and that, therefore, Specialty had to comply with R.C. Chapter 1309 in order to create and perfect a security interest in accounts receivable generated by the sale of those goods. According to Specialty, R.C. Chapter 1309 only applies to purported consignments that are disguised security interests and

was not applicable to this case because it supplied tires and tubes to Tiremix pursuant to a true consignment.

It is correct that R.C. Chapter 1309 contains rules for creation and priority of security interests that apply to purported consignments that are actually disguised security interests. R.C. 1309.02(B). That Chapter, however, is also relevant to true consignment agreements. R.C. 1302.39 and 1309.111 determine priority in goods delivered under a consignment agreement not intended as security. White & Summers, Uniform Commercial Code (4 Ed.1995) 28–37, Section 30–4.

R.C. 1302.39(C) provides that goods held on consignment are "deemed to be on sale or return," and thus subject to the claims of the consignee's creditors, unless the consignor:

"(1) complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

"(2) establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

"(3) complies with the filing provisions of section 1309.01 to 1309.50, inclusive, of the Revised Code."

R.C. 1309.111(A) establishes the priority of security interests in consigned goods for which the consignor is required by R.C. 1302.39(C)(3) to comply with the filing provisions of R.C. 1309.01 to 1309.50. It provides that the consignor has priority in the consigned goods and in "identifiable cash proceeds received on or before delivery of the goods to a buyer, if:

"(1) The consignor complies with the filing provision of division (C)(3) of section 1302.39 of the Revised Code with respect to consignments before the consignee receives possession of the goods; and

"(2) The consignor gives notification in writing to the holder of the security interest if the holder has filed a financing statement covering the same types of goods before the date of the filing made by the consignor; and

"(3) The holder of the security interest receives the notification within five years before the consignee receives possession of the goods; and

"(4) The notification states that the consignor expects to deliver goods on consignment to the consignee, describing the goods by item or type."

■ R.C. 1302.39 and 1309.111 determine priority in certain consigned goods and cash proceeds generated by the sale of those consigned goods. They do not, however, determine priority in accounts receivable generated by the sale of the

consigned goods. The issue in this case is priority in accounts receivable. R.C. 1302.39 and 1309.111, therefore, are irrelevant.

According to the 1978 Official Comment to Uniform Commercial Code Section 9–114, which is codified at R.C. 1309.111, if a consignor wishes to have priority in accounts receivable generated by the sale of consigned goods, it must comply with the rules for the creation and perfection of a security interest contained in Article 9 of the Uniform Commercial Code, R.C. Chapter 1309:

"Except in the limited cases of identifiable cash proceeds received on or before delivery of the [consigned] goods to a buyer, no attempt has been made to provide rules as to perfection of a claim to proceeds of consignments (compare Section 9–306) or the priority thereof (compare Section 9–312). It is believed that under many true consignments the consignor acquires a claim for an agreed amount against the consignee at the moment of sale, and does not look to the proceeds of sale. In contrast to the assumption of this Article that rights to proceeds of security interests under Section 9–306 represent the presumed intent of the parties (compare Section 9–203(3)), the Article goes on the assumption that if consignors intend to claim the proceeds of sale, they will do so by expressly contracting for them and will perfect their security interests therein."

Even if Specialty had a "true consignment interest" in the tires and tubes and complied with R.C. 1302.39(C)(3) by filing a financing statement, it would have still had to comply with R.C. Chapter 1309 in order to have priority in the accounts receivable. R.C. Chapter 1309, therefore, governs priority in the accounts receivable regardless of whether Specialty's interest in the consigned goods was a true consignment or a security interest.

■ Specialty's predecessor filed financing statements that covered the consigned goods and any proceeds from the sale of the consigned goods, including accounts receivable, with the appropriate county recorder on July 31, 1991, and with the Secretary of State on August 12, 1991. Assuming that, by filing these financing statements, Specialty acquired a perfected security interest in the accounts receivable generated by the sale of the tires and tubes it supplied Tiremix, that interest was junior to NCB's interest in those accounts. Tiremix had granted NCB a security interest in all its accounts receivable on October 26, 1986, and NCB had perfected that security interest by filing financing statements with the appropriate county recorder on October 30, 1986, and with the Secretary of State on November 3, 1986. NCB filed a continuation statement covering the accounts receivable with the Secretary of State on October 1, 1991. NCB had also filed financing statements in connection with its second loan to Tiremix with the appropriate county recorder on February 27, 1991, and with the Secretary of State on February 28, 1991.

By filing financing statements covering Tiremix's accounts receivable, NCB perfected its security interest in those accounts. R.C. 1309.21. Assuming that Specialty also had a perfected security interest in the accounts, both NCB and Specialty had perfected security interests in the same collateral. R.C. 1309.31(E)(1) determines priority in collateral when there are conflicting perfected security interests:

"Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, provided that there is no period thereafter when there is neither filing nor perfection."

Since Specialty filed its financing statements covering Tiremix's accounts receivable after NCB filed its financing statements covering the same collateral, NCB had priority in those accounts pursuant to R.C. 1309.31(E)(1).

The trial court, therefore, correctly granted NCB summary judgment on the ground that its security interest in the accounts receivable was superior to Specialty's interest in those accounts. Specialty's second assignment of error is overruled.

### C

Specialty's third assignment of error is that the trial court incorrectly applied R.C. 1309.111 to this case because Specialty did not intend to create a security interest in the goods at issue and R.C. 1309.111 does not determine priority in accounts receivable generated by the sale of consigned goods. The trial court held that, if R.C. 1309.111 applied to the facts of this case, NCB would prevail because Specialty failed to give NCB written notice of its consignment interest.

R.C. 1309.111 is not applicable to this case because it does not determine priority in accounts receivable. The trial court, therefore, incorrectly determined that R.C. 1309.111 afforded NCB a superior interest to Specialty's interest in the accounts receivable generated by the sale of tires and tubes supplied to Tiremix by Specialty. Inasmuch as NCB had a superior interest in those accounts receivable pursuant to R.C. 1309.31(E)(1), however, the trial court's error was harmless. Specialty's third assignment of error is overruled.

### D

Specialty's fourth assignment of error is that, even if R.C. 1309.111 is applicable to this case, Specialty would have had priority in accounts receivable generated by the sale of the tires and tubes it supplied Tiremix because NCB had actual knowledge of its consignment interest. R.C. 1309.111 is not applicable to

this case because it does not determine priority in accounts receivable generated by the sale of consigned goods. Specialty's fourth assignment of error is overruled.

## E

Specialty's fifth assignment of error is that Specialty's interest in the consigned goods was a true consignment, not a security interest. Regardless of whether Specialty's interest in the tires and tubes was a true consignment or a security interest, Specialty's interest in the accounts receivable generated by the sale of those tires and tubes was junior to NCB's interest in Tiremix's accounts receivable. Specialty's fifth assignment of error is overruled.

## III

Specialty's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and QUILLIN, J., concur.